## SHEARER, Admr v SANDS

Ohio Appeals, 2nd Dist, Franklin Co

No 2162.   Decided Oct 11, 1932

J. A. Shearer, Columbus, for plaintiff in error.

Paul M. Herbert, Columbus, for defendant in error.

HORNBECK, J.

The petition in error sets up eleven grounds of error claimed. However, upon oral presentation and upon consideration of this record, there are but two principal questions presented, viz., (1) Did the evidence offered by defendant in error in its most favorable aspect establish an express contract between George Johnson and defendant in error? (2) Was proof made of an express contract by the quantum required in cases of the character of the instant action, viz., by clear and convincing proof?

The first question must be determined on the short testimony of one witness, John H. Sands, the husband of defendant in error. This is found at page 6 of the record as follows:

"Q. Now, Mr. Sands, do you recall at any time hearing any discussion or talk between Mr. Johnson, the deceased, and Mrs. Sands, the plaintiff, relative to Mr. Johnson staying at her home and receiving care from her? A. Yes sir.

"Q. About when was that, Mr. Sands? A. That was only just a few days before he took his bed.

"Q. Now then, state what that conversation was?

"MR. SHEARER: I am going to object if you can't fix a date.

"THE WITNESS: I never paid no attention to the dates on it myself.

"Q. Well, as near as you can make it? A. Well, I would say around the 10th of July.

"Q. Of what year? A. '29.

"Q. All right. Now then, just state as accurately as you can recall the conversation then had between Mr. Johnson and Mrs. Sands? A. Why, he said to her, the Missus told him, 'Uncle George, we can not take care of you free of charge,' she said, 'It is too much care with our family.' He said, 'I don't expect anybody to take care of me free of charge.' He said 'My property will pay for that; I expect to pay anybody, whoever it may be, that takes care of me until my remaining days; I will pay them for it, or my property will.'

"Q. Did he say how much he would pay? A. No, he didn't, not to my hearing.

"Q. What reply, if any, did Mrs. Sands make to that statement? A. She told him if he was satisfied she was satisfied to take care of him the best she could."

These answers of course must be considered in the light of all the circumstances disclosed in the record. It fairly appears that George Johnson was a man at the time of the occurrences disclosed by the evidence in this case, a bachelor about sixty-four years of age. He had lived alone much of his life. In his later years he had been ill and had been under the care of his physician. Some evidence tends to show that his mind was affected, at least to a degree. His habits were slovenly and he objected to keeping clean. It is evident that he had reached a period in his life when he was satisfied that he should live with some one who could look after and take care of him. It was but natural that he should turn to his relatives, one of whom was Mrs. Sands, his niece. With this state of mind the conversation heretofore set forth is claimed to have occurred. Does it constitute an express contract? If it embodies the elements of a contract, it is express because we have the language which was used. We believe it may properly be interpreted as a proposal on the part of

defendant in error and an acceptance by Mr. Johnson of that proposal. The subject matter must have been under consideration. When, as Mr. Sands testified, defendant in error said to Mr. Johnson, "Uncle George, we can not take care of you free of charge; it is too much care with our family," that was tantamount to saying, "If we are to take care of you it can only be done if you pay us for it." His answer thereto was equivalent to saying, "I will pay you for it. I expect to pay anybody," which included defendant in error. And finally after this proposal was made and acceptance indicated, the defendant in error indicated a willingness to go forward upon the arrangement embodied in the proposal and acceptance. It is true that no rate of pay was suggested nor included, but the contract was complete when there was a proposal to take care of Mr. Johnson for compensation and his agreement to pay compensation. The law implies that the payment in the absence of express agreement would be in quantum meruit.

The other testimony found throughout the record in and of itself, as we have heretofore said, would not establish the contract which it was incumbent upon defendant in error to prove, but in conjunction with the proof of the contract it was all competent and had probative effect as tending to disclose the appreciation on the part of Mr. Johnson that he was obligated and expected to pay for the services he was receiving from Mrs. Sands and that they were not gratuitous. We have examined the case of **Martin v Haynes, 10 Abs 37**, a decision of this court from Montgomery County, and **Arns, Exr. v Disser, Ohio Bar, January 12, 1932, page 166, (11 Abs 190)**. The distinction between the latter case and the instant action is that there were nothing but pretatory words in the Arns case, and the element of proposal by the individual who instituted the suit was missing.

Yes.

We are unanimously of the opinion that in the light of the circumstances appearing in this case the language which we have heretofore quoted constitutes proof, if true, of an express contract such as required by **Hinkle v Sage, 67 Oh St, 256**, and **Merrick v Ditzler, 91 Oh St, 256**.

On the second proposition, viz., whether or not the proof is made by clear and convincing evidence. The testimony of Mr. Sands upon which the proof of the contract rests stands in the record undenied and uncontradicted. The jury viewed this witness and took his statements in the light of its obligation to consider the interest of the witness, his relation to the defendant in error, the probability of his statements and from it all to determine his credibility. If the jury determined that the witness was credible, then the weight of what he said would be sufficient to meet any demand of proof, as it can not be said that weight of proof depends upon the number of witnesses.

We have examined the other questions raised in the brief though not urged in oral argument. The court properly exercised its discretion in permitting the amendment to the petition changing the amount prayed for from $422.00 to $435.00, the sum set forth in the claim presented to the administrator. It follows that the charge of plaintiff in error requested before argument, being No. 6, was properly refused by the trial court.

It is asserted by plaintiff in error that the trial court erred in its general charge in failing to say to the jury that,

"If plaintiff has not produced any evidence as to the value of any particular item of service that she could not recover for any such item in the absence of proof."

This view of the obligation of proof upon the defendant in error is too restrictive under the law as enunciated in **Hossler v Trump, 62 Oh St, 139**, which held that,

"Domestic services, as nursing, washing and caring for a sick person, may be recovered for, although no witness expresses an opinion of their value. The jury may proceed upon common knowledge. Even if there had been opinion evidence, the jury would not have been bound by it."

Being satisfied that this case was properly presented on the law and the jury given full latitude to determine the facts, and having resolved them against the plaintiff in error, we find no prejudicial error.

The judgment of the trial court will therefore be affirmed.

ALLREAD, PJ, and KUNKLE, J, concur.